IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO.: 3:09-CV-440

| METROPOLITAN GROUP, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Memorandum and Order |
| | ) | |
| MERIDIAN INDUSTRIES, INC., | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss and all related memoranda of law and exhibits offered in support and opposition. (Document #20.)

**I. Background**

Plaintiff initiated this action on September 4, 2009 in the North Carolina Superior Court Division for Mecklenburg County, asserting claims for breach of contract, breach of warranty, trespass, fraud, and unfair and deceptive trade practices. The allegations arise out of an agreement between Plaintiff and Defendant for the purchase and sale of commercial real property located at 18 Linestowne Drive in Belmont, North Carolina (hereinafter "the Property").

On October 13, 2009, Defendant removed the case to the Western District of North Carolina. (Document #1.) Soon thereafter, on November 9, 2009, Defendant filed a Motion to Dismiss Counts IV and V of Plaintiff's Complaint, Plaintiff's claims for fraud and unfair and deceptive trade practices (hereinafter "UDTP"). (Document #6.) In response, Plaintiff filed a Motion to Amend its Complaint, (Document #13) which was granted by this Court in an Order filed on December 16, 2009. (Document #17.) The Order granting Plaintiff's Motion to Amend also rendered Defendant's previously filed Motion to Dismiss moot.

1

On December 16, 2009, Plaintiff filed its "First Amended Complaint." (Document #18-1.) In the Amended Complaint, Plaintiff retains all five claims, including the causes of action for fraud and UDTP. Plaintiff's fraud claim alleges that at the time of the Agreement, Defendant had knowledge of undisclosed hazardous substances on the Property, including asbestos, a leaking fuel oil tank, and hazardous chemicals. With this knowledge, according to Plaintiff, Defendant falsely represented that the only hazardous substance on the Property was a substance in the groundwater that had been identified by the North Carolina Department of Environment and Natural Resources. Plaintiff alleges that the false representations were made intentionally to cause Plaintiff to buy the Property for more than it was worth with the hazardous substances, that the false representations did in fact cause Plaintiff to do so, and that as a direct and proximate result, Plaintiff has suffered damages. In the UDTP claim, Plaintiff asserts that Defendant's actions, disclosing the substance in the groundwater while simultaneously misrepresenting that there were no other hazardous substances on the Property, violated N.C. Gen. Stat. § 75-1.1 and caused Plaintiff injury. As a result, Plaintiff maintains that it is entitled to recover from Defendant trebled damages pursuant to N.C. Gen. Stat. § 75-1.1, as well as attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

As with the original complaint, on January 4, 2010, Defendant filed a Motion to Dismiss Counts IV and V of Plaintiff's Amended Complaint and a Memorandum in Support of its Motion. (Documents #20, #21.) Defendant first contends that Plaintiff's fraud claim is "pled in a factually deficient, conclusory fashion," (Document #20, 1) and thus fails to satisfy the substantive elements required by North Carolina law. Furthermore, even if Plaintiff has included the necessary elements, Defendant argues that Plaintiff's allegations are insufficient under the heightened pleading standard applicable to claims of fraud. Lastly, Defendant moves the Court to dismiss Plaintiff's fraud claim

because Plaintiff has failed to properly distinguish it from the underlying breach of contract claim. Defendant's grounds for seeking dismissal of Plaintiff's UDTP claim are essentially identical. First, Defendant asserts that Plaintiff's Amended Complaint does not satisfy the requisite elements of a UDTP claim, as Plaintiff has not shown that Defendant knew of the other hazardous substances or acted immorally, unethically, or unscrupulously, within the meaning of N.C. Gen. Stat. § 75-1.1. And secondly, Defendant contends that, like the fraud claim, Plaintiff's UDTP claim is impermissible under North Carolina law because it is indistinguishable from the allegations for breach of contract. For these reasons, Defendant moves the Court to dismiss Counts IV and V of Plaintiff's Amended Complaint, pursuant to North Carolina substantive law and Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. This motion is now ripe for disposition.

This federal district court possesses subject matter jurisdiction over this dispute pursuant to the diversity of citizenship. See 28 U.S.C. §1332; Am. Compl. ¶¶1,2)

**II**. **Standard of Review**

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, 127 S. Ct. at 1964-65; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1954 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice"). Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." Id. at 1965, 1974.

**III. Discussion**

**A. Fraud**

In its motion to dismiss, Defendant first asserts that Plaintiff has failed adequately to plead the necessary substantive elements of a fraud claim, specifically, the requisite intent to deceive and reasonable reliance.[1] (Def.'s Memo. Supp. Mot. to Dismiss, 5-7.) Under North Carolina law, the following elements of fraud are well-established: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974). Thus, a pleading must allege, *inter alia*, that "the defendant made the false representation with intention that it should be acted upon by the plaintiff," Calloway v. Wyatt, 97 S.E.2d 881, 884 (N.C. 1957), and that the representation was reasonably relied upon by the plaintiff. Johnson v. Owens, 140 S.E.2d 311, 313 (N.C. 1965); Northwestern Bank v. Roseman, 344 S.E.2d 120, 123 (N.C. Ct. App. 1986) ("[t]here must also be reasonable reliance on the deceptive representation").

---

[1] Defendant also argues that Plaintiff failed to sufficiently plead causation, (Def.'s Memo. Supp. Mot. to Dismiss, 7) but Defendant's contention is more accurately a question of damages, and thus, does not provide an independent reason to dismiss Plaintiff's fraud claim. While disputing certain harm alleged, Defendant does not dispute Plaintiff's claims that as a "direct and proximate result of Defendant's misrepresentations, Plaintiff paid more for the Property than it would have" and "Plaintiff did not request money be set aside from the Defendant's proceeds in an escrow account." (Am. Compl., 8.) These undisputed allegations provide causation and injury; Defendant's argument regarding other harm is not relevant at this time.

4

A complaint satisfies the element of scienter in a fraud claim, "if there are facts alleged from which a fraudulent intent may be reasonably inferred." Carver v. Roberts, 337 S.E.2d 126, 128 (N.C. Ct. App. 1985) (holding that a claim that the seller knew of certain defects and concealed their existence satisfied the requisite element of an intent to deceive the buyer). At this stage of the case, therefore, a specific evidentiary basis is not required; "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 799 (E.D.N.C. 2005) (concluding that an intent to deceive could be inferred from the defendant's allegation that the plaintiff made representations it knew to be "false and misleading," despite a lack of evidentiary support).

Accepting as true the allegations in Plaintiff's Amended Complaint, prior to and in the Agreement, Defendant disclosed the existence of a hazardous substance in the groundwater, and represented that there were no other hazardous substances on the Property. (Am. Compl., 7.) According to Defendant, these facts support a conclusion that it "acted dutifully and in good faith by informing Plaintiff about what it knew at the time of the sale." (Def.'s Reply Memo. in Further Supp., 8.) But Plaintiff has further alleged that Defendant had knowledge of the other hazardous substances at the time of the Agreement and intentionally made false representations which were "reasonably calculated to deceive." (Am. Compl., 7-8.) Contrary to Defendant's argument, these allegations are sufficient – a complaint does not need to prove an intent to deceive to survive a Rule 12(b)(6) motion. See Food Lion, 382 F. Supp. 2d at 801; Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (concluding that dismissal under Rule 12(b)(6) was improper because the plaintiff had met her burden by alleging facts which, if proven, would demonstrate an intent to

5

deceive). The Court is satisfied that Plaintiff's claim of an intent to deceive "raise[s] a right to relief above the speculative level," Twombly, 127 S. Ct. at 1965.

Defendant's contention that Plaintiff's Amended Complaint inadequately demonstrates reasonable reliance is equally unavailing. There is no question that the law "imposes upon the individual the duty to exercise ordinary prudence in relying upon persons with whom they conduct their business affairs." Johnson v. Lockman, 254 S.E.2d 187, 189 (N.C. Ct. App. 1979); see also Keith v. Wilder, 86 S.E.2d 444, 447 (N.C. 1955). Nevertheless, as Defendant now concedes, (Def.'s Reply Memo. in Further Supp., 8) it is well-established that the reasonableness of a buyer's reliance on the seller's representations is a question for the jury. See Fox v. Southern Appliances, Inc., 141 S.E.2d 522, 526 (N.C. 1965); Johnson, 140 S.E.2d at 314 (holding that "[c]ourts should be very loath to deny an actually defrauded plaintiff relief on this ground"). It is only in exceptional cases that the issue of reasonable reliance should be resolved prior to a jury determination, and this matter does not provide such a case. See Roseman, 344 S.E.2d at 125. Whether Defendant perpetrated the fraud which Plaintiff has alleged, whether Plaintiff was induced to forego investigation by Defendant's representations, and whether Plaintiff reasonably relied on those representations, are all questions of fact for the jury. See Johnson, 140 S.E.2d at 315. Plaintiff has satisfied the requirement of reasonable reliance as well as the other the substantive elements of a fraud claim; hence, Defendant's opposing argument is without merit.

Next, Defendant moves the Court to dismiss Plaintiff's fraud claim on the grounds that the Amended Complaint lacks the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. (Def.'s Memo. Supp. Mot. to Dismiss, 7.) In most causes of action, the Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a). However, Both the Federal Rules of Civil Procedure and the North Carolina Rules of Civil Procedure require that "special matters," such as fraud claims, be pled with additional particularity. See Fed. R. Civ. P. 9(b) ("[i]n all averments of fraud and mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); N.C.G.S. § 1A-1, Rule 9(b) (same as the federal rule). The circumstances which must be pled with particularity consist of "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999); see also Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990). Lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). Harrison, 176 F.3d at 783, n.5.

In evaluating a complaint under this standard, a court should be cognizant of Rule 9(b)'s four purposes:

> First, the rule ensures that the defendant has sufficient knowledge to formulate a defense by putting it on notice of the conduct complained of . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

Harrison, 176 F.3d at 784 (citation omitted). A court, therefore, should be reluctant to dismiss a claim under Rule 9(b) if the court is satisfied "(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that the plaintiff has substantial prediscovery evidence of those facts." Id.; Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F. Supp. 2d 762, 772 (M.D.N.C. 2005).

According to Defendant, Plaintiff's fraud claim fails under the Rule 9(b) heightened pleading standard because it does not identify who specifically made the fraudulent representations, when it

7

occurred, or how that party benefitted from the fraud. (Def.'s Reply Memo. in Further Supp., 7.) Plaintiff has alleged that "[i]n the agreement," which was presented to Plaintiff "on or about July 19, 2006," (Am. Compl., 1) Defendant falsely represented that there were no additional hazardous substances on the Property (Am. Compl., 7). And as a direct result, "Plaintiff paid more for the Property than it would have if no misrepresentations had been made." (Am. Compl., 8.) These allegations undeniably set forth "the time, place, and contents of the false representations," Harrison, 176 F.3d at 784, as well as the benefit gained by Defendant. The inflated purchase price that Plaintiff alleges resulted from the misrepresentations is not solely an injury to the buyer, but is also clearly a profit for the seller, Defendant. Thus, the only possible merit to Defendant's argument is the absence of the specific identity of an individual responsible for the misrepresentations.

Given that the false representations were made "[i]n the Agreement," (Am. Compl. 7) however, it is logical that Plaintiff would simply identify "Meridian" and not a specific individual (Pl.'s Memo. Opp. Def.'s Mot., 6). Even under the heightened pleading standard of Rule 9(b), the Court will not dismiss an adequate fraud claim because Plaintiff did not name the agent that signed the document. See Food Lion, 382 F. Supp. 2d at 798 (holding that despite the stricter standard, "[i]t is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts"). The Court is satisfied that Defendant has been adequately put on notice of the allegations to formulate a defense and that Defendant is not being forced to defend against a "frivolous suit[]" in which "all the facts are learned after discovery," Harrison, 176 F.3d at 784. Accordingly, the Court rejects Defendant's contention that Plaintiff's Amended Complaint does not satisfy the Rule 9(b) requirements.

8

In its final cause for seeking dismissal, Defendant argues that Plaintiff has failed to properly distinguish its fraud claim from the allegations for breach of contract, as is required under North Carolina law. (Def.'s Memo. Supp. Mot. to Dismiss, 14.) For support, Defendant likens this case to other contract disputes in which courts have held that "the mere failure to carry out a promise in contract does not support a tort action," Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 346 (quoting Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994) (holding that "[o]nly where a breach of contract also constitutes an 'independent tort' may tort actions be pursued"). (Def.'s Memo. Supp. Mot. to Dismiss, 15.) As Defendant asserts, an "attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim," is "inconsistent both with North Carolina law and sound commercial practice." Strum, 15 F.3d at 329. Nevertheless, Defendant's reliance upon those decisions in this matter is misplaced because Plaintiff's allegations are distinguishable from claims dismissed for attempting to blur the line between contract and tort.

Although an ordinary breach of contract may not be transformed into a tort action, North Carolina courts recognize the possibility of an "independent tort" arising out of contract-centered litigation in "carefully circumscribed" circumstances. Newton v. Standard Fire Ins. Co., 229 S.E.2d 297, 301 (N.C. 1976); Broussard 155 F.3d at 346. The independent tort exception applies where a plaintiff claims "something more" than a simple dispute over the interpretation and performance of the subject contract. Broussard, 155 F.3d at 346-47. Specifically, courts will permit tort claims "which are identifiable and distinct from the primary breach of contract claim." Id., at 346.

The District Court for the Eastern District of North Carolina recently addressed this issue within the context of a Rule 12(b)(6) motion in an analogous case. See Food Lion, 382 F. Supp. 2d

9

at 799-801. In Food Lion, the defendant alleged in its counterclaim that the plaintiff made knowingly false representations prior to and during the formation of the agreement, as an inducement upon which the defendant relied in entering the contract. Id. at 800. Acknowledging the general rule against tort claims in breach of contract cases, the court concluded that North Carolina law permits a tort action where "fraudulent misrepresentations accompanying a breach of contract [a]re sufficiently alleged." Id. (citing Oestreicher v. American Nat'l Stores, Inc., 225 S.E.2d 797 (N.C. 1976)). Thus, because "[i]f proved, the alleged [fraudulent] behavior could constitute an independent tort," the court denied the plaintiff's Rule 12(b)(6) motion to dismiss. Id. at 801.

As in Food Lion, Plaintiff's fraud claim involves more than mere allegations that Defendant failed to perform contractual obligations. Plaintiff alleges that Defendant made false representations "reasonably calculated to deceive the Plaintiff into believing that no other hazardous substances were on the Property." (Am. Compl., 7-8.) In reliance on those representations, Plaintiff entered the Agreement to purchase the Property for a higher price than it would have otherwise, and did not request that additional funds be set aside in the escrow account. (Am. Compl., 8.) At this early stage, these allegations are sufficient to raise Plaintiff's claim above a simple contract dispute.

**B. Unfair and Deceptive Trade Practices**

As with the cause of action for fraud, Defendant contends that the Court should dismiss Plaintiff's UDTP claim because Plaintiff has not satisfied the requisite substantive elements. To establish a *prima facie* claim for unfair and deceptive trade practices, a plaintiff must show, "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Compton v. Kirby, 577 S.E.2d 905, 917 (N.C. Ct. App. 2003); Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). A

trade practice is "unfair" if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981). Meanwhile, courts identify a trade practice as "deceptive" if it "possesses the tendency or capacity to mislead, or creates that likelihood of deception." Forsyth Memorial Hospital v. Contreras, 421 S.E.2d 167, 170 (N.C. Ct. App. 1992) (quoting Overstreet v. Brookland, Inc., 279 S.E.2d 1, 7 (N.C. Ct. App. 1981).

Under North Carolina law, a plaintiff may assert both UDTP violations and fraud based on the same conduct or transaction. Jones v. Harrelson & Smith Contrs., LLC, 670 S.E.2d 242, 252 (N.C. Ct. App. 2008); Compton, 577 S.E.2d at 918. In fact, "it is well-settled that 'a plaintiff who proves fraud thereby establishes that unfair or deceptive trade practices have occurred.'" Jones, 670 S.E.2d at 252 (quoting Bhatti v. Buckland, 400 S.E.2d 440, 442 (N.C. Ct. App. 1991); see also Hardy v. Toler, 218 S.E.2d 342, 346 (N.C. 1975) (concluding that "[p]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts"). Accordingly, because the Court has already determined the adequacy of Plaintiff's fraud claim, Plaintiff has sufficiently stated a claim for unfair and deceptive trade practices.

Likewise, Defendant's assertion that Plaintiff has not distinguished its UDTP claim from the underlying breach of contract (Def.'s Memo. Supp. Mot. to Dismiss, 19) may also be summarily denied. Although a mere breach of contract, even if intentional, is insufficient to support an UDTP claim, "if the breach is surrounded by substantial aggravating circumstances, it may sustain an action for UDTP." Griffith v. Glen Wood Co., 646 S.E.2d 550, 558 (N.C. Ct. App. 1992) (citing Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992), rev. denied, 421 S.E.2d 350 (N.C. 1992)). Of ultimate importance in this case, fraud allegations are "substantial aggravating circumstances," which may provide the basis for a UDTP claim in contract-centered

litigation. See Bhatti, 400 S.E.2d at 443 (holding that "a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred"); Gress v. Rowboat Co., 661 S.E.2d 278, 283 (N.C. Ct. App. 2008) (concluding that an allegation of a fraudulent scheme of misrepresentations made to induce the defendants to enter an agreement was sufficient to survive the plaintiff's Rule 12(b)(6) motion to dismiss a UDTP counterclaim). Proof of fraud would *per se* constitute a UDTP violation, Hardy, 218 S.E.2d at 346; therefore, as a consequence of the fraud allegations in this matter, Plaintiff has adequately pled a claim for UDTP.

Due to the Court's judgment on the sufficiency of Plaintiff's fraud claim, Plaintiff's UDTP claim also necessarily survives Defendant's Rule 12(b)(6) Motion to Dismiss. The claim satisfies the three elements required by N.C.G.S. § 75-1.1 and is an independent cause of action from Plaintiff's claim for breach of contract. For the aforementioned reasons, Defendant's motion is denied.

**IV. Order**

**IT IS, THEREFORE ORDERED** that Defendant's Motion to Dismiss is hereby **DENIED**.

Signed: December 6, 2010

Richard L. Voorhees
United States District Judge